# UNITED STATES BANKRUPTCY COURT
# FOR THE
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RUST OF KENTUCKY, INC. | ) | CASE NO.: 10-10271(1)(11) |
| | ) | |
| Debtor(s) | ) | |
| RUST OF KENTUCKY, INC. | ) | AP NO.: 10-1032 |
| | ) | |
| Debtor-in-Possession/Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TMS CONTRACTING, LLC, et al | ) | |
| | ) | |
| Defendant(s) | ) | |

## MEMORANDUM-OPINION

This matter is before the Court on the Motion of TMS Contracting, LLC ("TMS") to Compel Arbitration and Stay Adversary Proceeding. The Court considered the Motion of TMS, the Motion of Fidelity & Deposit Company of Maryland ("Fidelity") Joining in the Motion of TMS to Compel Arbitration, the Objection to the Motion to Compel Arbitration of Plaintiff/Debtor Rust of Kentucky, Inc. ("Rust"), the Reply of TMS and the comments of counsel for the parties at the hearing held on the matter. For the following reasons, the Court **DENIES** the Motion to Compel Arbitration and Stay Adversary Proceeding.

**PROCEDURAL BACKGROUND**

TMS entered into a contract to perform as general contractor for the City of Clarksville, Tennessee ("City") to construct a marina, boat launch, park and storm water management system (the "Project"). TMS subcontracted the site work to Rust under two subcontract agreements whereby Rust was to do excavation work for the park and marina ("the Subcontracts").

Fidelity, as surety on the Project, issued a payment bond to TMS as principal and the City as obligee. The purpose of the Bond is to jointly and severally bind TMS and Fidelity "to pay for labor, materials and equipment furnished by Claimants for use in performance of the contract . . .". Fidelity also issued performance bonds to Rust naming TMS as obligee, assuring Rust's performance of the Subcontracts.

Several disputes arose between Rust and TMS during the course of the Project. As a result of these disputes, TMS stopped making payments to Rust and Rust stopped work on the Project.

The subcontracts contain the following provisions:

13.7  Direct Discussion

If a dispute arises out of or relates to this Agreement, the parties shall endeavor to settle the dispute through direct discussion.

13.8 Mediation

Disputes between Subcontractor and Contractor not resolved by direct discussion shall be submitted to mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association. The parties shall select the mediator within fifteen (15) calendar days of the request for mediation. Engaging in mediation is a condition precedent to any form of binding dispute resolution.

13.9 Other Dispute Processes

If neither direct discussions nor mediation successfully resolve the dispute, the parties agree that the following shall be used to resolve the dispute.

13.9.1  Arbitration

Arbitration shall be pursuant to the Construction Industry Rules of the American Arbitration Association, unless the parties mutually agree otherwise. A written demand for arbitration shall be filed with the American Arbitration Association and the other party to the Agreement within a reasonable time after the dispute or claim has arisen, but in no event after the applicable statute of limitations for a legal or equitable proceeding has run. The arbitration award shall be final. This agreement to arbitrate shall be governed by the Federal Arbitration Act, and judgment upon the award may be confirmed in any court having jurisdiction.

13.9.2 Litigation

Action may be filed in the appropriate state or federal court.

In November 2009, pursuant to the Subcontract, Rust requested that the matter go to mediation. TMS refused to engage in mediation contending the parties had not engaged in direct discussions to resolve the matter, a condition it asserted was a condition precedent to mediation.

In February 2010, TMS declared Rust in default under both Subcontracts. Shortly thereafter, on February 22, 2010, Rust filed its Voluntary Petition under Chapter 11 of the United States Bankruptcy Code. In the course of the Chapter 11 case, Rust moved to reject both of the Subcontracts.

Fidelity paid TMS $2,977,926.17 under the Performance Bond.

On June 30, 2010, Fidelity filed Proof of Claim No. 22 and subsequently amended that claim to $8,520,889, the amount Fidelity paid to TMS on the Performance Bond and the amount TMS paid on Rust's Performance Bond.

On or about August 11, 2010, Rust initiated this adversary proceeding asserting claims against TMS for breach of the Subcontracts and against Fidelity under the Payment Bond on the Project.

## **LEGAL ANALYSIS**

TMS and Fidelity seek an Order from this Court staying this adversary proceeding and compelling this matter to arbitration pursuant to subparagraph 3.9.1 of the Subcontract between Rust and TMS. Rust, however, contends that provision, when read in context with other provisions of the Subcontract, is not mandatory.

The Court begins its analysis with basic rules of contract construction. A contract will not be construed so as to reject any words as surplusage if they reasonably can be given meaning. Union Inv. v. Fidelity & Deposit Co. of Maryland, 549 F.2d 1107, 1110 (6th Cir. 1977). Each individual provision should be given a meaning that allows the entire contract to be given effect. An interpretation that gives a reasonable meaning to all parts of the contract is preferred to one that leaves provisions meaningless. Id. A court should attempt to give meaning to all provisions of a contract. Cincinnati Gas & Elec. v. F.E.R.C., 724 F.2d 550 (6th Cir. 1984).

The Defendants' request to compel arbitration of the underlying dispute relies only on one provision of the Subcontract and its interpretation cannot stand in light of the other sections of the Subcontract. Under paragraph 13.8, the Subcontract states, "Disputes between Subcontractor and Contractor not resolved by direct discussion shall be submitted to mediation . . .". The paragraph prior to this one provides that if a dispute arises, ". . . the parties shall endeavor to settle the dispute through direct discussion." Under paragraph 13.9, "If neither direct discussions nor mediation successfully resolve the dispute, the parties agree that the following shall be used to resolve the dispute. . ." What follows this provision is subsection 13.9.1 on arbitration and subsection 13.9.2 which states, "action may be filed in the appropriate state or federal court."

Reading all of these provisions together, the Court is convinced that the conditions precedent to referring the matter to arbitration did not occur before this action was filed. Rust sought to invoke direct discussions and mediation, prerequisites to any required arbitration, but its efforts were not successful. In fact, TMS, the party seeking to enforce the arbitration provision, refused to engage in mediation contending that the condition precedent to mediation, direct discussions under paragraph 13.7, had not occurred.

The Court also does not agree with TMS and Fidelity's position that the provision in the Subcontract regarding litigation applies only to enforcement of any arbitration award. Paragraph 13.9 is entitled "Other Dispute Processes." It clearly provides that if direct discussions nor mediation are successful then the parties are given two alternatives to resolve the dispute. These are contained in subparagraph 13.9.1 Arbitration and subparagraph 13.9.2 Litigation. The Subcontract's terms allow the parties to choose arbitration or litigation to resolve disputes. There is no term within the Subcontract requiring arbitration prior to the initiation of litigation in any "appropriate state or federal court." There are no terms within the Subcontracts requiring resolution of the disputes set forth in this adversary proceeding solely by arbitration.

Fidelity is not a party to the Subcontracts yet it joined in the Motion of TMS to Compel Arbitration. The Court has reviewed the TMS Payment Bond and the Rust Performance Bonds. There are no provisions within either mandating arbitration.

Finally, the Court finds, while acknowledging the clear preference for requiring arbitration by federal courts, there is no case law compelling arbitration under the circumstances at bar. The Court reviewed the eight factors a bankruptcy court may consider in deciding whether to enforce contractual arbitration as set forth in In re Nu-Kote Holding, 257 B.R. 855, 863 (Bankr. N.D. Tenn.

2001). Analysis of these factors does not support arbitration in this case. First, arbitration was not commenced prior to suit being filed. Next, TMS and Fidelity have both appeared in the underlying bankruptcy. While an arbitrator may deal with the issues set forth herein more frequently, this Court is familiar with bond disputes and routinely adjudicates breach of contract cases. The Debtor also has no prospect of confirming a plan until the issues of this adversary proceeding have been handled. There will be no piecemeal litigation and arbitration would subject the bankruptcy estate to needless expense. The matters to be resolved herein are core matters pursuant to 28 U.S.C. §157(b)(1) and within this Court's jurisdiction. Accordingly, this Court will not compel arbitration of the matter set forth in the pending adversary proceeding.

## **CONCLUSION**

For all of the above reasons, the Court will enter the attached Order denying the Motions of TMS and Fidelity to Compel Arbitration and stay adversary proceeding.

# UNITED STATES BANKRUPTCY COURT
## FOR THE
## WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RUST OF KENTUCKY, INC. | ) | CASE NO.: 10-10271(1)(11) |
| | ) | |
| Debtor(s) | ) | |
| RUST OF KENTUCKY, INC. | ) | AP NO.: 10-1032 |
| | ) | |
| Debtor-in-Possession/Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TMS CONTRACTING, LLC, et al | ) | |
| | ) | |
| Defendant(s) | ) | |

## ORDER

Pursuant to the Memorandum-Opinion entered this date and incorporated hereby by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motion of TMS Contracting, LLC to Compel Arbitration and Stay Adversary Proceeding and the Motion of Fidelity & Deposit Company of Maryland joining in that Motion be, and hereby are, **DENIED**.